T.C. Memo. 1999-262


UNITED STATES TAX COURT


ESTATE OF VESTA K. ALWARD, DECEASED, WILLIAM R. MCPIKE, EXECUTOR,
Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5830-98.                    Filed August 4, 1999.


William R. McPike (an executor), for petitioner.

<u>Caroline Tso Chen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal estate tax in the amount of $33,750 and
generation-skipping transfer tax in the amount of $12,320.

All section references are to the Internal Revenue Code in
effect as of the date of decedent's death, and all Rule

references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After a concession,[1] the sole issue for decision is whether petitioner may deduct for estate tax purposes a bequest of $50,000 made in decedent's will to the Emerson Cemetery (the cemetery) located in Emerson, Missouri. We hold it may not.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference.[2]

### FINDINGS OF FACT

Petitioner is the Estate of Vesta K. Alward. Decedent died a resident of Fresno County, California, on April 6, 1994. William R. McPike (McPike or the executor) is the executor of decedent's estate. On the date the petition in this case was filed, McPike was a resident of Auberry, California.

On August 9, 1990, decedent executed her last will and testament (the will) at Bakersfield, California. The will was modified twice by codicils executed on May 1 and July 3, 1992.

The will originally provided:

---

[1]Petitioner conceded that a $25,000 bequest made to the Benevolent and Protective Order of Elks No. 266 (the Elks) in Bakersfield, California, was not deductible for estate tax purposes.

[2]We have considered each of the parties' arguments and, to the extent that they are not discussed herein, find them to be unconvincing.

\*    \*    \*    \*    \*    \*    \*

FOURTH:  RESIDUE.

A.    I make the following charitable gifts from the residue of my estate after payment of taxes, costs, and expenses of administration:

1.    To EMERSON BAPTIST CHURCH located in Emerson, Missouri, to be used for historical preservation and maintenance, I give a sum equal to twenty percent (20%) of the residue of my estate but not to exceed Two Hundred Thousand Dollars ($200,000.00); and

2.    To the BAKERSFIELD SOCIETY FOR PREVENTION OF CRUELTY TO ANIMALS (SPCA) located in Bakersfield, California, to be used for its general charitable purposes, I give a sum equal to ten percent (10%) of the residue of my estate but not to exceed One Hundred Thousand Dollars ($100,000.00).

B.    I make the following gifts to individuals from the residue of my estate after payment of taxes, costs, and expenses of administration:

1.    To the EMERSON CEMETARY [sic] located in Emerson, Missouri, to be used for historical preservation and maintenance, I give a sum equal to two and one-half percent (2.5%) of the residue of my estate but not to exceed Twenty-five Thousand Dollars ($25,000.00);

\*    \*    \*    \*    \*    \*    \*

16.    To THE BENEVOLENT AND PROTECTIVE ORDER OF ELKS NUMBER 266 (B.P.O.E. No. 266) in Bakersfield, California, I give a sum equal to two and one-half percent (2.5%) of the residue of my estate but not to exceed Twenty-five Thousand Dollars ($25,000.00);

The first codicil to decedent's will revoked the above referenced fourth paragraph of the will in its entirety and replaced it with the following:

FOURTH:  RESIDUE.

A.  I make the following charitable gifts from the residue of my estate after payment of taxes, costs, and expenses of administration:

1.  To EMERSON BAPTIST CHURCH located in Emerson, Missouri, to be used for historical preservation and maintenance, I give a sum equal to twenty percent (20%) of the residue of my estate, but not to exceed Two Hundred Thousand Dollars ($200,000);

2.  To the BAKERSFIELD SOCIETY FOR PREVENTION OF CRUELTY TO ANIMALS (SPCA) located in Bakersfield, California, to be used for its general charitable purposes, I give a sum equal to two and one-half percent (2.5%) of the residue of my estate, but not to exceed Twenty-five Thousand Dollars ($25,000).

3.  To the EMERSON CEMETARY [sic] located in Emerson, Missouri, to be used for historical preservation and maintenance, I give a sum equal to five percent (5%) of the residue of my estate, but not to exceed Fifty Thousand Dollars ($50,000);

4.  To THE BENEVOLENT AND PROTECTIVE ORDER OF ELKS NUMBER 266 (B.P.O.E. No. 266) in Bakersfield, California, I give a sum equal to two and one-half percent (2.5%) of the residue of my estate, but not to exceed Twenty-five Thousand Dollars ($25,000).

On Schedule O of Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, McPike deducted the gifts to the cemetery and the Elks from the gross estate as charitable bequests.

The Emerson Baptist Church was established on July 18, 1846. It has a long history in the community, and several generations have worshiped there.

On February 12, 1961, a group of interested persons met at the Emerson Baptist Church for the purpose of forming a corporation in order to improve the community cemetery.  On March 2, 1961, a certificate of incorporation was issued to the Emerson Cemetery Association (the association) pursuant to The General Not For Profit Corporation Act of Missouri, ch. 355 (1991).  The articles of incorporation, also filed March 2, 1961, state that the purpose for which the association is organized is:

> To maintain and beautify a public burying ground; to buy, lease, hold and sell real or personal property as may be necessary and convenient for the conduct of the association; to accept and hold, from any source, as trustees, any funds, moneys, personal or real property which may be put in trust for any purpose consistent with the activities of the association and to fully administer such trusts; to do each and every thing necessary, suitable, and proper for the purpose of this organization.

The association priced graves and grave openings, decided the types of stones, erected and painted a caretaker's building, and hired labor for the general maintenance of the cemetery, such as mowing.

The original bylaws of the association stated that any person interested in its objectives and aims could become a member by declaring his or her interest and signing the membership roll.  After the enrollment of the original members, new members had to be approved at the regular annual members' meeting.  The original bylaws also stated that of the six

directors of the association, two would be members of the Emerson Baptist Church and two would be members of the Emerson Christian Church.

The Emerson Baptist Church is located on land that has the following legal description:

> All of Lots Five (5), Six (6), Seven (7) and Eight (8), Block Nineteen (19), Emerson, Marion County, Missouri.

The association land has the following legal description:

> All of Block Seven (7) and the West Half of Jefferson Street East of said Block Seven (7), and All of Lots One (1), Two (2), Three (3), Four (4), Five (5) and Six (6), Block Ten (10), all in Emerson, Marion County, Missouri.

The parcels of real property owned by the Emerson Baptist Church are separate and distinct from the parcels of real property owned by the association.  There is no common ownership.

## OPINION

The Commissioner's determinations are presumptively correct, and the taxpayer bears the burden of proving otherwise.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 2055 provides in relevant part:

> (a) In General.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers--

> (1) to or for the use of the United States, any State, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;
>
> (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *

The fact that a corporation is organized under a nonprofit corporation statute is not sufficient for it to qualify as a recipient pursuant to section 2055(a)(2).  See Estate of Smith v. Commissioner, T.C. Memo. 1961-242.  It must also be organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes.  See sec. 2055(a)(2); sec. 20.2055-1(a)(2), Estate Tax Regs.; see also Estate of Smith v. Commissioner, supra.

It is well established that an estate is not entitled to a deduction for a bequest made to a nonprofit cemetery unless the cemetery is devoted to an exclusively charitable purpose.  See Mellon Bank, N.A. v. United States, 762 F.2d 283 (3d Cir. 1985); First Natl. Bank v. United States, 681 F.2d 534 (8th Cir. 1982); Child v. United States, 540 F.2d 579 (2d Cir. 1976); Gund's Estate v. Commissioner, 113 F.2d 61 (6th Cir. 1940); Estate of Amick v. Commissioner, 67 T.C. 924 (1977); see also Linwood Cemetery Association v. Commissioner, 87 T.C. 1314 (1986).

Where a cemetery is owned, operated, and adjoined by a church as the church burial ground, and the church is operated

exclusively for religious purposes, a bequest for the maintenance of the cemetery qualifies for a deduction. See Estate of Audenried v. Commissioner, 26 T.C. 120 (1956); Rev. Rul. 67-170, 1967-1 C.B. 272. In addition, a bequest to a cemetery owned and operated by a city or municipality may qualify for the estate tax charitable deduction pursuant to section 2055(a)(1). See Rev. Rul. 79-159, 1979-1 C.B. 308, 309.

Petitioner argues that the cemetery is owned by the Emerson Baptist Church. Therefore, petitioner argues, the cemetery is a qualified recipient under section 2055 and the estate is entitled to a deduction.[3] To establish that the cemetery is owned by the Emerson Baptist Church, petitioner introduced a document from the Wells Abstract Co. in Hannibal, Missouri. The document provided:

> 1. The Emerson Baptist Church has the following legal description:
>
> > All of Lots Five (5), Six (6), Seven (7) and Eight (8), Block Nineteen (19), Emerson, Marion County, Missouri.
>
> a) Lots Five (5) and Six (6), Block Nineteen (19) are shown to be vested as follows: Elijah D. Gullion, William F. McPike and Edward McPike, Trustees of Baptist Church of Emerson, and their successors, per Warranty Deed dated February 4, 1879 and filed of record February 7, 1879 in Book 82, Page 16, Marion County Records.

---

[3] To eliminate any confusion, petitioner acknowledged at trial and on brief that the $50,000 bequest to the cemetery was paid to the association.

b)    Lots Seven (7) and Eight (8), Block Nineteen (19) are shown to be vested as follows:  Trustees of the Emerson Baptist Church, per Quit Claim Deed dated August 1, 1889 and filed of record January 22, 1903 in Book 159, Page 397, Marion County Records.

2.    The Emerson Cemetery Association land has the following legal description, per the Marion County Assessor's Office:

All of Block Seven (7) and the West Half of Jefferson Street East of said Block Seven (7), and All of Lots One (1), Two (2), Three (3), Four (4), Five (5) and Six (6), Block Ten (10), all in Emerson, Marion County, Missouri.

a)    After examining the records of the Recorder of Deeds office, we find no conveyance deed filed of record transferring the property known as all of Block Seven (7) to the cemetery or the Cemetery Association, yet the Assessor's Office records and maps show this property to be part of the Emerson Cemetery Association lands.

b)    The lots in Block Ten (10) are shown to be vested as follows:  Emerson Cemetery Association, a Corporation, per General Warranty Deed dated March 2, 1961 and filed of record December 18, 1961 in Book 497, Page 401, Marion County Records.

The abstract establishes that the parcels of real property owned by the Emerson Baptist Church are separate and distinct from the parcels of real property owned by the association. There is no common ownership of real property between the Emerson Baptist Church and the association.

Other objective facts imply an inclusive community cemetery, rather than one owned and operated exclusively by or on behalf of the Emerson Baptist Church.  The association held its annual

meetings in July.[4]  From 1961 through 1965, the meetings were held in alternate years at the Emerson Baptist Church and the Emerson Christian Church.  The meetings between 1961 and 1965 featured guest speakers from various other churches and members from the community at large, including a former teacher.  From 1966 through 1976, the annual meetings were held at the community center.  In addition, the minutes from the 1972 annual meeting stated that "It was reported there had been over 100 letters sent to people interested in the cemetery."  The minutes from the 1974 annual meeting also state that the county was asked to gravel the road on the east side of the cemetery.[5]  These facts imply that although the cemetery may be religiously influenced, it is not solely a church burial ground for the Emerson Baptist Church.

We have concluded that the Emerson Baptist Church does not own the cemetery.  We now consider whether the association is devoted to an exclusively charitable purpose.  Petitioner has failed to meet its burden of proving that the association is devoted to an exclusively charitable purpose.  See Rule 142(a); Welch v. Helvering, supra at 115.  Accordingly, the bequest to the association does not qualify for the estate tax charitable deduction under section 2055.  See Mellon Bank, N.A. v. United

---

[4]The date for the 1975 annual meeting was changed to Aug. 2.

[5]Petitioner does not argue, and the record does not indicate, that the cemetery is owned by the county.

States, supra; First Natl. Bank v. United States, supra; Child v. United States, supra; Gund's Estate v. Commissioner, supra; Estate of Amick v. Commissioner, supra.

For the foregoing reasons,

Decision will be entered

for respondent.