## Boggess et al. v. Inabnit et al.

Dec. 6, 1940.

Charles C. Marshall, Judge.

674

Ollie J. Bowen for appellants.

J. W. Gaines for appellees.

Opinion of the Court by Judge Tilford—Affirming.

By his inartificially drawn will, probated August 19, 1924, R. A. Routt devised certain lands to his widow for life, and upon her death or re-marriage, to his daughter for life, and upon her death, to her son, the appellant, Thomas Boggess, with the provision that the property should "not be transferred to any person till their death when it is to be sold to the highest bidder and the money put into government bonds and interest on said lands to go to Hebron Cemetery for benefit of our graves". There were other provisions in the will indicating that the testator intended that his daughter and only grandson should have merely successive life estates in the property, and that the bonds to be purchased with the proceeds of the sale of the remainder should be held in trust and the income paid to the Hebron Cemetery Company, a nonprofit corporation incorporated under the provisions of Section 879, Kentucky Statutes, for the care of the family graves.

The daughter died in 1935; and on March 11, 1939, this action was instituted by the testator's widow and grandson to secure a construction of the will and a determination of the enforceability of a contract with the appellee, Inabnit, by which the latter had agreed to purchase certain of the lands, provided testator's widow

and grandson could convey a fee simple title predicated upon the will and a deed from the Cemetery Company to the grandson.

In this deed the Cemetery Company recited that its interests in the property were uncertain, and that "it is believed that the purpose of the said R. A. Routt as appears from said will and testament will be best carried out and the interest of the Hebron Cemetery in caring for said graves best served by the present acceptance by said Company of the sum hereinafter named ($500.00) in full compromise and settlement of all claim or interest it may have to or in said land". How the purposes expressed by the testator were to be carried out was not explained and it nowhere appears in the record, other than by implication, that the Cemetery Company, as part of the consideration for the payment, or otherwise, had agreed to care for the graves. By an amended petition the death of the testator's widow was alleged, and in their joint answer, Inabnit and the Cemetery Company raised only the question of the power of the Cemetery Company to relinquish its interest in the land. No proof was introduced and the Chancellor dismissed the petition, reciting in his decree that the grandson took only a life estate and that the bequest to the Hebron Cemetery was a continuing trust, and that the quitclaim deed executed by the Cemetery Company was void.

Counsel for appellants and counsel for appellees agree that the grandson took a fee simple title in remainder, and hence that the restrictions upon alienation during his lifetime were void. They find themselves in complete accord upon the proposition that a trust may be terminated by agreement of all parties affected and that the $500 paid or to be paid the Cemetery Company is amply sufficient for the care of the graves. We might exclaim with the psalmist, "Behold how good and pleasant it is for brethren to dwell together in unity", were we not confronted with a will which limits the grandson's interest to a life estate, and a statute, Section 880, which prohibits a nonprofit or charitable corporation from disposing of property received as a gift or devise for a special purpose. See also, C. J. S., Volume 14, Section 66, p. 532, "Charities," under the subtitle "Modification and Termination".

But there is still a further obstacle to our agreeing

with counsel, and that is that the lands were not devised to the Cemetery Company in remainder. The will merely directs that the land be sold after the grandson's death, that the proceeds be invested in government bonds, and the interest "go to Hebron Cemetery for the benefit of our graves". Accordingly, it will be necessary when the occasion arises for the Court to appoint a trustee to hold the bonds.

It appears that the total value of the lands included in the devise is $5,325, and it is agreed that the interest on this sum would largely exceed the amount necessary to care for the graves. But we are unable to predict what the lands would sell for at the grandson's death, or the rate of interest which government bonds will then yield. If the entire amount cannot be properly expended for the care of the graves, the trustee can petition the Chancellor for advice as to the disposition of the excess.

The bequest was valid. Kentucky Statutes, Section 317; Street v. Cave Hill Investment Co., 191 Ky. 422, 230 S. W. 536. With its wisdom we are not concerned, and it is manifest that neither the Cemetery Company nor the grandson could destroy it.

Judgment affirmed.