88 Cal.App.3d 383 (1979)
151 Cal. Rptr. 770
Estate of RAY EDWARDS, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
HOPE D. MACARTNEY, as Executrix, etc., Objector and Respondent.
Docket No. 19605.
Court of Appeals of California, Fourth District, Division Two.
January 16, 1979.
*385 COUNSEL
Myron Siedorf, Margaret Groscup and James R. Birnberg for Petitioner and Appellant.
Armstrong & Brown and Laurence K. Brown for Objector and Respondent.
*386 OPINION
McDANIEL, J. 

STATEMENT OF FACTS
Ray Edwards, deceased, bequeathed the following gift in article four of his will:
"To Oakland Cemetery Association [hereafter Cemetery] of Saint Paul, Minnesota, a public cemetery, the sum of One Hundred Thousand Dollars ($100,000.00) in memory of my beloved wife, A. Estelle H. Edwards."
An inheritance tax referee concluded that the bequest to Cemetery was subject to California inheritance tax in the amount of $17,037. That report was filed with the trial court and Hope D. Macartney, executrix (hereafter Executrix) of the decedent's will filed objections to it. At bottom she contended that the bequest to Cemetery was exempt from California's inheritance tax under sections 13841[1] and 13842[2] of the Revenue and Taxation Code.
*387 Executrix' objections to the tax referee's report were tried without a jury. The trial court sustained those objections and made an order fixing inheritance tax based upon the following findings of fact and conclusions of law:
"[T]he laws of Minnesota contained a reciprocal provision meeting the requirements of Section 13842(c)(2)[[3]] of the California Revenue and Taxation Code; and that said corporation is exempted from corporation franchise and income tax by the provisions of Section 23701c of the California Revenue and Taxation Code.
"From the foregoing Findings of Fact, the Court concludes as a matter of law that said Oakland Cemetery Association is a corporation exempt by the laws of this State from taxation, within the meaning of Section 13841 of the Revenue and Taxation Code, and that the decedent's bequest to it also meets all the requirements of Section 13842 of said Code for exemption from inheritance tax."
Thus, the trial court concluded that the inheritance tax referee's report regarding Cemetery's inheritance tax obligation was erroneous and Cemetery was not subject to California inheritance tax.
Kenneth Cory, State Controller (hereafter Controller) appeals from that order contending Cemetery presented: "(1) ... no evidence of exclusive charitble [sic] organization or operation as required by Section 13842; (2) ... no evidence that Oakland Cemetery Association, a non-California corporation was exempted from taxation by the laws of *388 California; (3) the existence of a Minnesota inheritance tax exemption for public cemeteries was irrelevant to the question of exemption from California inheritance taxation; and (4) the provisions for charitable reciprocity were likewise irrelevant since the transferee was not organized or operating exclusively for the purposes set forth in Section 13842." As demonstrated below, we limit our review to the issue of whether Cemetery is properly characterized as a charity pursuant to section 13842. Hence, we address only Controller's first and forth contentions. (See fn. 1, ante.)

ISSUES AND DISCUSSION
In our view, the primary issue raised on this appeal is whether Cemetery is "organized and operated exclusively for ... charitable ... purposes" under section 13842. (1) "[A]ppellate inquiry into the availability of the charitable exemption is a matter of law, unrestricted by the probate court's findings. [Citation.]" (Estate of Allen, 17 Cal. App.3d 401, 405 [94 Cal. Rptr. 648].) (2) Moreover, in analyzing whether Cemetery is entitled to section 13842's charitable exemption, "the character of the transferee [Cemetery], ... is the first consideration under the terms of' that section. (Estate of Barter, 30 Cal.2d 549, 555 [184 P.2d 305].)
However, the fact that Cemetery can be characterized as a charity does not automatically entitle it to section 13842's inheritance tax exemption. Minnesota, Cemetery's state of incorporation, must provide a reciprocal exemption provision before Cemetery can utilize section 13842's exemption. (See fn. 3, ante.) In other words, Minnesota law must grant reciprocal death or inheritance tax exemptions for transfers to out of state charities. (See Cal. Inheritance Tax Practice (Cont.Ed. Bar 1973) § 9.13, p. 188.) As indicated infra, Minnesota law contains such a provision. Thus, we have concluded the trial court properly sustained Executrix' objections to the inheritance tax referee's report and Cemetery is properly characterized as a charity and entitled to section 13842's exemption from California inheritance tax.

I

(3a) Section 13842's Charitable Inheritance Tax Exemption Applies to Cemetery

Section 13842 denotes a number of factors Cemetery must comply with to be entitled to charitable exemption from California's inheritance tax. *389 Those factors include exclusive organization and operation for a charitable purpose; noninurement of earnings to private stockholders or individuals; and lack of substantial activities for purposes of propaganda or influencing legislation. (See fn. 2 ante.) Moreover, as previously noted, Cemetery must demonstrate that Minnesota law contains a reciprocal exemption section. (See fn. 3 ante.) In that regard, Executrix argues that "[t]he laws of Minnesota do contain such a [reciprocity] provision.... Thus, the decedent's $100,000 bequest is exempt under Section 13842 if Oakland Cemetery Association is `organized and operated exclusively for ... charitable ... purposes....'" (Original italics.)
Controller concedes Cemetery has demonstrated compliance with two of section 13842's major factors requiring noninurement of earnings to stockholders and lack of substantial activities for purposes of propaganda or influencing legislation. (4) The fact Cemetery operates on a nonprofit basis with none of its profits inuring to the benefit of any of its members, is an important factor weighing heavily in its favor for charitable characterization. (See, e.g., La Societe Francaise v. Cal. Emp. Com., 56 Cal. App.2d 534, 542-543 [133 P.2d 4], cert. den., 320 U.S. 736 [88 L.Ed. 436, 64 S.Ct. 35].) Controller maintains, however, that Cemetery is not organized and operated for exclusively charitable purposes and therefore is outside the scope of section 13842's exemption. In our view, however, Controller has failed to point to any evidence that Cemetery engages in activities that would negate its argument for charitable characterization.
The record indicates that Cemetery was organized in 1853 and operated at decedent's death as a public cemetery under Minnesota state law. Cemetery's purposes, as enumerated in article III of its certificate of amendment of articles of incorporation are:
"a. Said corporation shall be operated exclusively for the benefit of its members and not for pecuniary profit.
"b. Said corporation shall act and operate solely for burial purposes as a cemetery corporation and shall not engage in any business not necessarily incident to that purpose.
"c. No part of the net earnings of the corporation shall inure to the benefit of any private member or individual.
*390 "d. All of the revenue and earnings received by the corporation shall be used solely for the development and maintenance of the land owned by the corporation and to provide trust funds for the perpetual care of the cemetery property."
In addition, Cemetery's secretary and general manager describes its operations as follows:
"1. Oakland Cemetery Association is operated as a `public cemetery' under Chapter 306 of the Minnesota Statutes.
"2. The Cemetery is available to the public at large.
"3. There is no restriction as to race or religion.
"4. There are approximately 45,000 persons buried in the Cemetery.
"5. Persons buried in the Cemetery represent persons of many races, religions and walks of life.
"6. Oakland Cemetery Association has no stockholders. None of its earnings inure to the benefit of any other individual.
"7. The Association never has nor does it plan to carry on propaganda or otherwise attempt to influence legislation."
Controller offers no evidence contradicting that advanced by Cemetery. Hence, with the exception of determining whether Cemetery is organized and operated for an exclusive charitable purpose, Cemetery has satisfied each factor section 13842 denotes as necessary for charitable characterization. We now must determine whether Cemetery's activities are exclusively charitable.
(5) The concept of "benefit to the public" serves as a primary test to be satisfied in claiming general charitable status in California. "Relief of poverty is not a condition of charitable assistance. If the benefit conferred has a sufficiently widespread social value, a charitable purpose exists. [Citations.]" (Estate of Henderson, 17 Cal.2d 853, 857 [112 P.2d 605].) Additionally, "`[a] bequest is charitable if: ... its aims and accomplishments are of religious, educational, political or general social interest to mankind ... [and] ... [t]he ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion *391 thereof. [Citations.] ...'" (Estate of Allen, supra, 17 Cal. App.3d 401, 408.)
More precisely, section 13842's charitable exemption from inheritance tax demands that the beneficiary seeking such status maintain the objective of "`lessening the burdens of government.' [Citations.]" (Estate of Allen, supra, 17 Cal. App.3d 401, 408.) "[I]nheritance tax is a revenue measure; [and] in exempting bequests to charitable organizations, the Legislature intended the benefits of the property to redound to the people of the state as a compensating factor." (Id.)
(6) Executrix contends that Cemetery's operations and organization satisfy the "benefit to the public" test. (Id.) More precisely, that test is clearly satisfied, according to Executrix, because Cemetery performs important public health and spiritual functions by disposing of human remains resulting in a public benefit of substantial value that lessens the burdens of government. As already noted, "[a]n equivalent feature of charitable status is an objective or set of objectives `lessening the burdens of government.' [Citations.]" (Estate of Allen, supra, 17 Cal. App.3d 401, 408.) On that ground, in conjunction with the fact Cemetery satisfies each of the previously mentioned section 13842 requisites, we believe Cemetery is properly characterized as a charity.
Cemetery's fundamental responsibility is the proper disposal of human remains. That function is critically important to society because it insures that society is not subject to disease from decomposing human remains. Absent Cemetery's presence in the private marketplace, and the presence of other similarly situated cemeteries, government would be required to provide that crucial service. Hence, in our view, Cemetery's presence and continued operation in the private marketplace effectively lessens the burden of government.
Our analysis here is not unique. A dissenting appellate court judge in Child v. United States (2d Cir.1976) 540 F.2d 579, 585-590, certiorari denied, 429 U.S. 1092 [51 L.Ed.2d 538, 97 S.Ct. 1104], made a similar analysis in arguing that two cemeteries were entitled to charitable treatment under federal estate tax laws. In that case, the majority affirmed a trial court's decision that the nonprofit cemeteries were not charities and that gifts to them were therefore not entitled to federal estate tax deductions. The rationale underlying the majority's decision was based on its determination that Congress had elected to treat cemeteries differently than charities for tax purposes. The court noted "[i]n 1954 ... *392 the Code was amended to provide an express exemption from the income tax for `[c]emetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit....' [Citation.] But it is significant that this was done as a special exemption, wholly outside the rubric of `charitable' ... status...." (Id., at pp. 581-582.)
In dissenting to that decision one judge advanced an argument similar to the one we advance here supporting his contention that the cemeteries involved were charities. He reasoned that "this court has stated that an organization may be classified as one organized and operated exclusively for charitable purposes if it performs functions which, absent the organization, `would descend upon the public,' i.e., on government.... It seems clear that, were it not for cemetery associations, such as Grove and Brookside (formerly Watertown), responsibility for maintaining burial grounds would devolve upon the government. This would be a matter of both public health, [citation], and general civil responsibility." (Id., at p. 585.) We agree with that reasoning and conclude Cemetery is organized and operated for an exclusive charitable purpose.
Additionally, Executrix points to the State Controller's own regulation interpreting section 13842 as demonstrating Cemetery is properly characterized as a charity. That regulation reads: "13842. Charitable Organization. An organization will ordinarily be considered to be charitable in character if it is one organized and existing for the principal purpose of promoting the welfare of mankind at large, or of a community, or of some class forming a part of it indefinite as to numbers and individuals, and operates without pecuniary profit or gain to its incorporators, shareholders, or members. Among other organizations that commonly fall in this category are the American National Red Cross; the Boy Scouts of America; and religious, social, educational, recreational, and cemetery nonprofit corporations organized pursuant to Division 2 of Title 1 of the Corporations Code." (Cal. Admin. Code, tit. 18, § 13842, italics added.)
Controller urges we disregard that regulation because it "has not been revised since it was initially adopted in 1941, despite the fact.... Section 13842 was amended several times...." Moreover, according to Controller, Cemetery "does not fall within its terms since it has not been organized under Division 2, Title I of the Corporations Code." We disagree with Controller's attempt to diminish the value of his own regulation. (7) Interpretation of that regulation, like statutory interpretation, is a question of law. While the Controller's interpretation of its *393 own regulation deserves great weight, ultimate resolution of that question rests with this court. (Carmona v. Division of Industrial Safety, 13 Cal.3d 303, 310 [118 Cal. Rptr. 473, 530 P.2d 161].) Furthermore, "no regulation adopted is valid or effective unless consistent ... with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374.)
We find no inconsistency between the Controller's regulation and section 13842, the statute it interprets. The only possible basis lending any substance to Controller's contention the regulation be disregarded is that section 13842 today requires that Cemetery be organized and operated exclusively for charitable purposes while the regulation alludes to a principal purpose. The Controller's regulation, however, reflects his express interpretation that cemetery nonprofit corporations, if they meet the test for charitable status, are entitled to inheritance tax exemption under section 13842. Therefore, even assuming a substantive definitional difference exists between entities organized for an exclusive versus a principal charitable purpose, if Cemetery meets the requirements of the more stringent test, the fact it would be considered a charity under the former test should not change.
We note parenthetically that the regulation's reference to cemeteries "organized pursuant to Division 2 of Title I of the Corporations Code" does not affect its interpretative value. Controller argues that section 9200 of division 2 of the Corporations Code permits distribution of assets on dissolution or winding up to the corporation's members and therefore "is contrary to the requirements of noninurement and of organization and operation `exclusively' for the statutory purposes." Controller's argument, however, is an attempt at obfuscation. His own regulation alludes to the fact nonprofit cemeteries can be within the scope of section 13842's charitable exemption from inheritance tax. We believe that to be consistent with that interpretation, the regulation's reference to cemeteries organized pursuant to the Corporations Code must refer solely to part 3 of division 2 of title I, Corporations for Charitable or Eleemosynary Purposes. In that regard the regulation's reference to the Corporations Code is entirely consistent with section 13842.
Moreover, Controller's exception to the interpretative use of the regulation because Cemetery was organized under Minnesota and not California corporate law is meritless. (8) We agree with Executrix' position that "the fact [Cemetery] was organized in Minnesota, rather *394 than California, should make no difference in determining whether its burial purposes are charitable ..."
Finally, Controller's reliance on a New Jersey court's decision in In re Estate of Kuebler, 106 N.J. Super. 13 [254 A.2d 115], as support for his contention Cemetery is not a charity is misplaced. In that case a New Jersey cemetery company appealed from an inheritance tax bureau's determination that a bequest to it of unimproved real property was subject to inheritance tax. Like Cemetery here, the New Jersey cemetery sought characterization as a charity to use that state's charitable exemption statute. The appellate court affirmed the tax bureau's determination reasoning that "[t]he majority of decisions by the courts of other states demonstrates that cemetery companies or associations are not deemed to be charitable institutions for the purpose of exemption under their respective taxing statutes. See Town of Milford v. Commissioners, 213 Mass. 162, 100 N.E. 60, 61 (Sup.Jud.Ct. 1912); Bulloch v. Long, 260 Mass. 129, 156 N.E. 743 (Sup.Jud.Ct. 1927); In re Hill's Estate, 131 Me. 211, 160 A. 916, 83 A.L.R. 928 (Sup.Jud.Ct. 1932); Lexington Cemetery Co. v. Commonwealth, 297 Ky. 851, 181 S.W.2d 699 (Ct.App. 1944); Christgau v. Woodlawn Cemetery Ass'n, 208 Minn. 263, 293 N.W. 619 (Sup.Ct. 1940); Industrial Comm. v. Woodlawn Cemetery Ass'n, 232 Wisc. 527, 287 N.W. 750 (Sup.Ct. 1939)." (Id., at p. 118.)
In relying upon that authority the Kuebler court, like the federal court in Child v. United States, supra, based its analysis on the narrow ground of legislative intent, rather than fully analyzing the characteristics of the cemetery involved to determine whether it operated as a charity. In other words, Kuebler and each of the cases it relied upon, specifically noted that the respective state Legislatures had expressly elected to treat cemeteries as entities, separate and distinct from charities, under their general taxing statutes. Thus, the court would not attempt to characterize a "cemetery" as a "charity" where the state Legislature had apparently decided each was subject to significantly different treatment: "Our law has generally not treated cemeteries as equatable with charitable institutions. Whenever it was intended to embrace a cemetery as within the orbit of a tax exemption provision, it has always been done so expressly.... We do not find a `cemetery' reasonably embraced within the words `churches, hospitals and other charities,' either expressly or by fair implication, under the rule of ejusdem generis." (In re Estate of Kuebler, supra, 254 A.2d 115, 117-118.)
*395 We find no indication and Controller points to none, that the California Legislature elected to differentiate between cemeteries on the one hand and charities on the other under section 13842. That section is to be liberally construed to favor and encourage charitable funds and should not be construed so that the burden of inheritance taxes is laid upon property donated to such uses. (See, e.g., Estate of Irwin, 196 Cal. 366, 373 [237 P. 1074]; Estate of Cutler, supra, 122 Cal. App.2d 147, 151.) Our general analysis of Cemetery's organization and operation, the Controller's interpretative regulation and the rule of liberal construction leads us to the conclusion Cemetery is properly characterized as a charity within section 13842's ambit.
The fact that Cemetery is properly characterized as a charity under California law, however, as previously noted, does not automatically entitle it to inheritance tax exempt status under section 13842. However, we have already observed that Minnesota law does similarly offer corporations organized in other states inheritance tax exempt treatment pursuant to a reciprocal provision. The law reads: "Any devise ... [to the enumerated entities, e.g., charities, for the proper purpose] shall be exempt, if, at the date of the decedent's death, the laws of the state under the laws of which the transferee was organized or existing, either (1) did not impose a death tax of any character, in respect of property transferred to a similar corporation, fund, foundation, trust, or association, organized or existing under the laws of this state, or (2) contained a reciprocal provision under which transfers to a similar corporation, fund, foundation, trust, or association, organized or existing under the laws of another state were exempted from death taxes of every character if such other state allowed a similar exemption to a similar corporation, fund, foundation, trust, or association, organized under the laws of such state." (Mason's Minn. Stat. Ann., § 291.05, italics added; see fn. 3 ante for California's analogous provision.)
Unlike section 13842, subdivision (c)(2), the Minnesota statute specifically exempts public cemeteries like Cemetery as well as charities from inheritance tax. On that basis Controller urges Minnesota has evidenced a legislative intent to distinguish between cemeteries and charities in the granting of tax exemptions. (See, e.g., In re Estate of Kuebler, supra, 254 A.2d 115.) Thus, Cemetery cannot use the reciprocal provision in section 13842, subdivision (c)(2) to avoid California's inheritance tax because Minnesota law would not extend an inheritance tax exemption to a California public nonprofit cemetery on the basis of it being characterized as a charity. Such a cemetery would, at first blush, be entitled to *396 exemption under the Minnesota statute's express provision for cemeteries. However, according to Controller, because a similar express provision is not present in section 13842 and Cemetery is not a charity, the reciprocal provision is inapplicable. We disagree.
(3b) Cemetery seeks inheritance tax exempt status pursuant to section 13842 as a charity. We have held that under California law, Cemetery is properly characterized as a charity. Because Minnesota similarly grants exemption from its inheritance tax to charities pursuant to section 291.05 the rule of reciprocity is met.

DISPOSITION
The trial court's order fixing inheritance tax is affirmed.
Gardner, P.J., and Tamura, J., concurred.
A petition for a rehearing was denied February 13, 1979, and appellant's petition for a hearing by the Supreme Court was denied April 12, 1979. Mosk, J., Manuel, J., and Newman, J., were of the opinion that the petition should be granted.
NOTES
[1] All section references are to the Revenue and Taxation Code unless otherwise indicated.

The inheritance tax exemption granted by section 13841 reads: "Property transferred to any of the following is exempt from the tax imposed by this part:
"(a) The United States.
"(b) This State.
"(c) A public corporation of this State.
"(d) A society, corporation, institution, or association exempt by the laws of this State from taxation."
Executrix relies specifically upon subdivision (d) as support for her argument Cemetery is exempt from California inheritance tax. She reasons that because Cemetery is exempt from corporation franchise and income tax by section 23701c it is exempt from inheritance tax under section 13841, subdivision (d). Because we hold Cemetery is properly characterized as a charity pursuant to section 13842, we do not reach the issue of whether it is also exempt under section 13841, subdivision (d).
[2] Section 13842 reads in pertinent part:

"Property transferred to any society, corporation, institution, or association, in trust or otherwise, or to any foundation or trust, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation, is exempt from the tax imposed by this part, if any of the following conditions is present:
"(a) The society, corporation, institution, foundation, trust, or association is organized solely for religious, charitable, scientific, literary, or educational purposes under the laws of this state or of the United States; provided that if the transfer is to, or in establishment of, a trust organized for such purposes, the trustee need not be organized solely for such purposes." (Italics added.)
[3] Section 13842, subdivision (c)(2) reads as follows:

"(c) In the event that the society, corporation, institution, foundation, trust, or association is organized or existing under the laws of a territory or another state of the United States or of a foreign state or country, at the date of the decedent's death either of the following concurred: ...
"(2) The laws of the territory, other state, foreign state, or foreign country contained a reciprocal provision under which property transferred to a similar society, corporation, institution, or association organized or existing under the laws of another territory or state of the United States or foreign state or country was exempt from legacy, succession, or death taxes of every character, if the other territory or state of the United States or foreign state or country allowed a similar exemption in respect to property transferred to a similar society, corporation, institution, or association organized or existing under the laws of another territory or state of the United States or foreign state or country."
Under that section if the laws of another state comply with the conditions it prescribes then property transferred to an entity in that state is exempt from California inheritance tax. (See, e.g., Estate of Cutler, 122 Cal. App.2d 147 [264 P.2d 164].)